**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**


| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | : | |
| | : | |
| **v.** | : | **CRIMINAL ACTION** |
| | : | **NO. 20-372** |
| **DESLOUIS EDOUARD, JR.** | : | |
| . | | |

**MEMORANDUM**

**SCHMEHL, J.**  */s/JLS*                                        **July 1, 2021**

On October 21, 2020, Defendant was charged by indictment with two counts of mail fraud, in violation of 18 U.S.C. § 1341, two counts of wire fraud, in violation of 18 U.S.C. § 1343, one count of access device fraud, in violation of 18 U.S.C. § 1029(a)(2), one count of possessing device making equipment, in violation of 18 U.S.C. § 1029(a)(4), and four counts of aggravated identity theft, in violation of 18 U.S.C. § 1028A(a)(1), (c)(4), (c)(5). Following Defendant's arrest in Florida in January 2021, a Magistrate Judge of the Southern District of Florida found that the Defendant presented a serious risk of flight and ordered that he be detained pending transportation back to the Eastern District of Pennsylvania. On May 21, 2021, following oral argument, United States Magistrate Judge Carol Sandra Moore Wells of the Eastern District of Pennsylvania, ordered the Defendant detained pending trial. Magistrate Judge Wells found that the Defendant presented a substantial risk of flight and that no condition or combination of conditions could reasonably assure his appearance as required. Presently before the Court is the Defendant's "Motion to Vacate the May 21, 2021 Detention Order." The Court held a hearing by video on the motion on June 28, 2021. For the reasons that follow, the motion is denied.

At the June 28, 2021 hearing, the Court heard testimony from the Defendant and his previous counsel, Robert Goldman, Esq. ("Goldman"). The Court also heard argument from defense counsel and the government.

On January 15, 2020, the FBI conducted a search of the Defendant's residence in the Eastern District of Pennsylvania which was allegedly rented in the name of an identity theft victim. Defendant was not arrested. Defendant subsequently retained Goldman to represent him. On May 8, 2020, Defendant appeared in person on his own volition to make a proffer to the government. In June, 2020, Defendant traveled to Florida to attend the funeral of his father who had suddenly passed away and to help his ailing mother. During the hearing, the government confirmed that Defendant's father had indeed passed away in June, 2020. Goldman testified that he never informed Defendant that he could not leave the Eastern District of Pennsylvania after the proffer with the government. Goldman testified that following the proffer, he did not know the whereabouts of the Defendant and whether he was living in the area. Goldman also testified that he did not know that Defendant's father had suddenly passed away in Florida or that the Defendant's mother was ailing.

Following the proffer, the government delivered a draft of a plea agreement to Goldman in July, 2020. Goldman emailed the plea agreement to Defendant. Defendant testified that he wanted to review the plea agreement before he signed it. Defendant testified that he ultimately did sign the plea agreement because he did not understand all of its provisions and Goldman had not explained those terms to him. Goldman testified that on September 15, 2020, Defendant informed him that he did not want to plead guilty and instead wanted to proceed by indictment and that he wanted to self-surrender when indicted.

Following Defendant's indictment by a grand jury on October 21, 2020, the government informed Goldman by phone that Defendant had been indicted. In the ensuing days, Goldman attempted to reach out to Defendant on at least five occasions through email, telling Defendant to "call me back", "call me-it is important", "need you here on Wednesday to appear for your arraignment, "I do not believe you are avoiding my emails"   According to Goldman, Defendant "went dark" and did not respond to any of his emails and changed his phone number. On October 28, 2020, Goldman informed the government that he could not reach his client. Goldman testified that up until the time of Defendant's indictment, he could always get in touch with the Defendant.

Defendant testified that he did not receive the emails from Goldman and that in any event he did not respond to Goldman's attempts to reach him because he believed that Goldman had overcharged him and therefore there was no longer any need for him to respond to Goldman. Defendant testified that he did not learn he had been indicted until the time of his arrest in Florida on January 17, 2021. At the time of his arrest, Defendant was allegedly driving a vehicle that he had purchased in Pennsylvania with a stolen ID. According to the government, Defendant had already stated during the proffer that he no longer possessed this vehicle. At the time he was stopped, Defendant also presented his real driver's license to the arresting officer as well as a license to carry a firearm which was found in the vehicle.

This Court has jurisdiction to review the Magistrate Judge's decision under 18 U.S.C. § 3145(a)(1). Pursuant to Section 3145(a)(1), this Court is required to conduct a *de novo* review of the Magistrate Judge's ruling. *See United States v. Delker*, 757 F.2d 1390,  1394 (3d Cir. 1985); *see also United States v. Talbert*, No. 20-266, 2020 WL 6048788, at *3 (W.D. Pa. Oct. 13, 2020). In conducting this review, the district court may rely on the transcript of the proceeding before the Magistrate Judge. *Id*.; *see also*

*United States v. Rodriguez*, Criminal Action No. 07-709, 2007 WL 4373042, at *2 (E.D. Pa. Dec. 13, 2007).

The Bail Reform Act, which governs the issue of pretrial detention, delineates four factors that the Court consider in determining whether conditions of release exist that "will reasonably assure" Defendant's appearance as required and "the safety of any other person and the community":

> (1) the nature and circumstances of the offense charged;
>
> (2) the weight of the evidence against Defendant;
>
> (3) the history and characteristics of Defendant, including his character, physical and mental condition, family ties, employment, financial resources, length of residence in the community, community ties, past conduct, history relating to drug or alcohol abuse, criminal history, and record concerning appearance at court proceedings; and
>
> (4) the nature and seriousness of the danger to the community posed by Defendant's release.

18 U.S.C. § 3142(g); *see also United States v. Himler*, 797 F.2d 156, 161 (3d Cir. 1986). ("Judicial officers making risk of flight determinations are guided by the factors set forth in § 3142(g)."); *United States v. Miller*, No. Crim.A. 00-103-02, 2000 WL 633048, at *2 (E.D. Pa. May 5, 2000).

The government has the burden of demonstrating risk of flight justifying pre-trial detention by a preponderance of the evidence. *See Himler*, 797 F.2d at 161. The government must show a defendant presents a danger to the community, such that pre-trial detention is warranted, by clear and convincing evidence. *See* 18 U.S.C. § 3142(f); *Himler*, 797 F.2d at 161. Although a rebuttable presumption applies to certain criminal violations, it does not apply in this case. *See* 18 U.S.C. § 3142(e).

After a *de novo* review, the Court concludes that the government has proven by a preponderance of evidence that Defendant presents a serious risk of flight and that no condition or combination of conditions will secure the Defendant's appearance as required. The Court finds that Defendant received and learned from Goldman's emails during the week of October 21, 2020 that he had indeed been indicted. After learning that he had been indicted Defendant "went dark" and did not contact Goldman to self-surrender as he had previously told Goldman was his desire. Defendant was then able to avoid authorities for three months. And, unlike in *Himler*, the Defendant does not have a prior record of appearing in court as a factor for the Court to consider.

The Court acknowledges that Defendant does not have a criminal history. Despite Defendant's lack of criminal history, if convicted of the charges in the indictment, Defendant faces a significant term of imprisonment. The Court recognizes the United States Sentencing Guidelines are only advisory. The Court notes, however, that the government asserts that the advisory guideline sentence for Defendant, if convicted at trial, is 70 to 81 months' imprisonment, including a 24-month consecutive statutory mandatory sentence for the charge of aggravated identity theft. Further, the evidence against the Defendant, as outlined at length in the indictment, is strong and includes witness testimony, numerous records, surveillance photographs and forensic evidence. As detailed in the indictment, the defendant is charged with engaging in extensive identity theft activity involving more than 450 identity theft victims, including their personal identification information and credit card numbers associated with their names. Specifically, Defendant is charged with having used false names and identities to rent apartments, open accounts at AT&T Wireless stores in the Allentown, Pennsylvania area under which he purchased Apple brand products, and to make a fraudulent car purchase in the amount of $32,000 using another individual's identity.

Defendant was driving this vehicle when he was arrested. A search of the Defendant's residence in Florida revealed that he was allegedly renting the residence in the name of one of his victims and also revealed electronic devices (cell phone iPad laptop computer), fraudulent drivers licenses and device-making equipment. Thus, Defendant certainly possesses the skills necessary to evade law enforcement and, as was stated, "hide in plain sight." According to the indictment, the total loss accumulated is over $522,000.00.

Although Defendant claims he is a citizen and resident of the Commonwealth of Pennsylvania, the Defendant does not own any property in the Eastern District of Pennsylvania and is not currently employed. Defendant appears to have significant ties to the State of Florida where he was born and raised and where his mother, sisters and nephews live.

Defendant claims the fact that he presented his actual identification to the arresting officer on January 21, 2021 in Florida is proof that he is not a flight risk. However, It may well be that the only reason Defendant presented his actual ID was because there was a firearm in the vehicle (for which he had a valid License to Carry) at the time he was arrested and Defendant no doubt wanted to make sure the officer was aware that his actual identification matched the identification on the License to Carry.

Defendant claims he has employment "lined up" with a clothing company and can live with an Anthony Andoll in Bethlehem, Pennsylvania if Defendant is released. As the government points out, the Defendant was already living with Anthony Andoll for at least part of the time he was engaging in his alleged criminal actions in the Eastern District of Pennsylvania. Further, simply having some non-specific employment "lined up" is not at all persuasive.

In short, the weight of the evidence against Defendant combined with the potential significant penalty he faces if convicted creates a serious risk that Defendant will not only flee to avoid such penalties but has every means available to him to assume another person's identity and "hide in plain sight"; and even bond and electronic monitoring are not enough to ensure his obligation to appear before the Court.

For these reasons, the Court determines that no condition or combination of conditions will reasonably assure the appearance of Defendant as required.